## STANDSTILL AGREEMENT

This Stipulation and Standstill Agreement is entered into as of ~~October~~ Nov 5, 2019 ("Agreement"), by and among Barry Honig ("Honig") and GRQ Consultants, Inc. ("GRQ" and collectively with Honig the "Honig Parties"), on the one hand, and Greg Cohen Promotions, LLC ("GCP") and Gregory D. Cohen ("Cohen" and together with GCP the "Cohen Parties"), on the other hand.

**WHEREAS**, GCP acknowledges that it has an outstanding pre-existing debt owing to the Honig Parties in the amount of $1,026,000 (which accounts for all prior balances of any loans made to the Cohen Parties; any other obligations owed by the Cohen Parties; less repayments made through the date of this Agreement) (the "Pre-Existing Debt"); and

**WHEREAS** the Honig Parties may have certain claims against the Cohen Parties that would not be dischargeable in bankruptcy.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in consideration of the mutual covenants and agreements to be performed as hereinafter set forth, it is stipulated and agreed among the parties as follows:

1. **LOAN OBLIGATION OWING AND STANDSTILL**. GCP acknowledges that it currently owes the Honig Parties the sum of $1,026,000 in unpaid loans (the "Loan Balance"). As long as the Cohen Parties strictly comply with the terms of this Agreement and are not subject to the jurisdiction of a bankruptcy court, the Honig Parties shall standstill from taking any action to enforce any claims or payment provisions from prior agreements the Honig Parties have with the Cohen Parties.

2. **LOAN REPAYMENT**. It is agreed by the parties that the Loan Balance shall be repaid to the Honig Parties in the following manner:

a. For each Non-GCP Event in which a GCP fighter participates (Non-GCP events are where GCP receives a Provision of Services Agreement ("POS Agreement") from the lead promotor)(hereinafter "POS Events"), GCP shall pay to the Honig Parties a percentage of the Gross Revenue received by GCP from each such event as follows:

(i) GCP shall pay to the Honig Parties, 100% of the Gross Revenue received by GCP from each such event up to the first $70,000;

(ii) thereafter, GCP shall pay to the Honig Parties, 50% of the Gross Revenue received by GCP from each event above $70,000 up to $400,000;

(iii) thereafter, GCP shall pay to the Honig Parties, 60% of the Gross Revenue received by GCP from each such event above $400,000;

For purposes of clarity, the Gross Revenue received by GCP does not include the fighter's purse or such promotional fees paid to co-promotors.

b. For GCP Events (where GCP is the lead promotor – in this case, GCP is responsible party for paying all expenses), GCP shall pay to the Honig Parties 50% of the Net Revenue generated on all GCP fighter bouts (the "Bouts").

c. for purposes of this Agreement, Net Revenue shall be calculated for each Bout as follows:

All revenue from each Bout less the following sums: (a) direct expenses of such Bout; (b) indirect expenses of such Bout (including but not limited to any event staffing or consulting fees). For purposes of clarify, the following are included with the category of deductible expenses: all event related insurance; all travel and meal per diem for the fighters, their team members and promotional staff, as well as ground transportation to and from the airport for these same persons.

d. Cohen agrees to personally guarantee the payment obligations of GCP to the Honig



2

Parties from the Loan Balance.

e. Payments made to the Honig Parties shall be made within 7 days after a Bout and shall be made by GCP to Barry Honig and delivered at Honig's option either (i) via certified check payable to Barry Honig and delivered to 215 S.E. Spanish Trail, Boca Raton, Florida 33432 or such other address provided by Honig or (ii) via wire instructions provided by Honig.

g. As additional consideration payable to the Honig Parties in connection with the releases granted herein, even after the full repayment of the Loan Balance, GCP shall continue to pay the Honig Parties 40% of the Gross Revenue received by GCP for POS Events in which any of (a) Jarrell Miller; (b) Robert Brant; (c) Lennox Allen; (d) Mickey Bey; (e) Mike Perez; (f) Radzhab Butaev; (g) Cody Crowley; (h) Billiel Dibb; and (i) Mladen Miljas (the "Select Fighters") participate, as long as such Select Fighter remain under contract with GCP or any affiliate of Cohen or GCP.

3. **VERIFICATION** – GCP shall open a new bank account into which all future GCP receipts shall be deposited. The Honig Parties shall be provided with viewing access to see the transactions in such accounts in order to verify the receipts and disbursements made by GCP. GCP shall also provide the Honig Parties with a copy of all promotional agreements in advance of each Bout, and a reconciliation of receipts and disbursements within 20 days after each Bout. The Cohen Parties shall provide the Honig Parties with any information or documentation requested by a Honig Party to verify any of the Cohen Parties' obligations hereunder and compliance therewith. The Cohen Parties shall provide copies of all their tax returns for each year commencing with the return for 2019 until the Loan Balance is paid in full.

4. **EVENT OF DEFAULT**

3

In the event that GCP fails to make an agreed required payment in accordance with Paragraph (1) above (an "Event of Default") then the Honig Parties may elect to immediately, and without further notice, declare the entire Loan Balance less any payments already made under this Agreement, immediately due and payable. Upon an Event of Default GCP will additionally owe the Honig Parties liquidated damages in the amount of $125,000.

The amounts due under this agreement shall not be dischargeable in bankruptcy.

5. **NO PARTNERSHIP.** Nothing herein shall create any joint venture or partnership between the Honig Parties and the Cohen Parties; nor shall this agreement provide any assignment of any rights of GCP in any promotional agreement with any fighter or grant the Honig Parties any rights to manager any fighter, accept or reject any Bout, change the terms of any GCP agreements, or to manage any aspect of GCP's business operations or decisions.

6. **NOT SUPERSEDE PRIOR AGREEMENTS.** This agreement is not a novation of the Cohen Parties' existing obligations to the Honig Parties and shall not supersede any of the Honig Parties claims against the Cohen Parties except as follows the Consulting Agreement between GRQ and GCP dated August 5, 2019 is terminated. In the event a Cohen Party shall be the debtor in a bankruptcy proceeding or otherwise be subject to the jurisdiction of a bankruptcy court, the Honig Parties may file any claim and assert any claim they currently have against the Cohen Parties, including making fraud allegations, to ensure that the amounts owed to Honig hereunder are not

7. **RELEASE OF THE HONIG PARTIES.** For and in consideration of the promises and covenants contained herein, the Cohen Parties, their agents, representatives, predecessors, principals, shareholders, members, directors, officers, managers, heirs, successors, beneficiaries and assigns hereby release and forever discharge the Honig Parties, and their agents,

4

representatives, predecessors, heirs, successors, beneficiaries and assigns (together, the "Honig Releasees") from any and all demands, obligations, actions, causes of action, debts, liabilities, rights, contracts, damages, costs, expenses, loses or claims of any kind whatsoever, whether liquidated or unliquidated, whether known or unknown, suspected or unsuspected, anticipated or unanticipated, in law or in equity, which the Cohen Parties may now have against any of the Honig Releasees or ever had, or which they hereafter can, shall or may have arising from any conduct, agreement or other matter occurring prior to the date of this Agreement. Carved out from this release is any obligation created by this Agreement.

8. **RELEASE OF THE COHEN PARTIES**. For and in consideration of the promises and covenants contained herein and upon timely full payment of the Loan Balance, the Honig Parties, their agents, representatives, predecessors, heirs, successors, beneficiaries and assigns hereby release and forever discharges the Cohen Parties, their agents, representatives, predecessors, principals, shareholders, members, directors, officers, managers, heirs, successors, beneficiaries and assigns, including for purposes of clarity Gregory and Michelle Cohen (together, the "Cohen Releasees") from any and all demands, obligations, actions, causes of action, debts, liabilities, rights, contracts, damages, costs, expenses, loses or claims, of any kind whatsoever, whether liquidated or unliquidated, whether known or unknown, suspected or unsuspected, anticipated or unanticipated, in law or in equity which the Honig Parties may now have against any of the Cohen Releasees or ever had, or which he hereafter can, shall or may have arising from any conduct, agreement or other matter occurring prior to the date of this Agreement. **Carved out from this release is any obligation created by this Agreement, including but not limited to the payment obligations of GCP.**



9. This Agreement contains the entire understanding of the parties hereto with respect to the subject matter. The recitals herein are inserted only as a matter of convenience and reference and are not to give any effect whatsoever in construing this Agreement. The parties hereby acknowledge that there have been no representations, warranties, covenants or understandings other than those expressly set forth therein or herein. No change, modification or waiver of any of the provisions of this Agreement will be binding unless signed by an authorized representative of the party against whom the same is sought to be enforced. This Agreement shall be binding upon the Parties hereto and their respective legal representatives, successors, assigns, parents, subsidiaries and affiliates.

10. Should any provision of this Agreement be declared or be determined by any court or tribunal to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be severed and deemed not to be part of this Agreement.

11. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and together shall constitute one instrument. The parties also agree that this Agreement may be executed by facsimile or e-mail and that facsimile or e-mail signatures shall be deemed as original signatures and shall be binding as if original signatures.

12. Each party acknowledges that it has had the opportunity to negotiate modifications to the language of this Agreement. Accordingly, each party agrees that in any dispute regarding the interpretation or construction of this Agreement, no presumption will operate in favor of or against any party hereto by virtue of its role in drafting or not drafting the terms and conditions set forth herein.

6

13. This Agreement will be governed by the substantive laws of the State of New York, without regards to the conflicts of laws provisions thereof that would result in the application of the substantive law of any forum other than the State of New York. The parties each hereby irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the State and County of New York for the adjudication of any dispute hereunder or in connection herewith and waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper.. The parties acknowledge and agree that irreparable damage would occur in the event that certain provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. It is accordingly agreed that the parties shall be entitled an injunction or injunctions to prevent or cure such breaches of the provisions of this Agreement and to enforce specifically the applicable terms and provisions hereof or thereof, this being in addition to any other remedy to which any of them may be entitled by law or equity.

14. This Agreement shall be binding upon, enforceable by and against, and shall inure to the benefit of the parties and their respective heirs, personal representatives, successors and assigns.

15. No delay or failure by any party to exercise any right hereunder, and no partial or single exercise of any such right, shall constitute a waiver of that or any other right, unless otherwise expressly provided herein.

16. In the event that Gregory Cohen shall cease operating GCP the Loan Balance shall immediately come due in full. Additionally if Cohen shall accept a job with any entity other than GCP or be self-employed outside GCP, then Cohen agrees to pay 60% of his personal net income

7

(after taxes, insurance and other payroll deductions) from such employment to the Honig Parties as repayment of any outstanding Loan Balance.

17. The Cohen Parties agree that they will not conduct boxing business under any name other than in the name of the Cohen Parties. The Cohen Parties further agree not to enter into any transaction, agreement, understanding, or series or combination thereof that would result in circumventing the Honig Parties' rights under this Agreement.

18. Except as otherwise provided herein, all notices, requests, consents and other communications hereunder shall be deemed to be sufficient if contained in a written instrument (a) delivered in person or sent by a nationally recognized overnight courier or first class registered or certified mail, return receipt requested, postage prepaid and (b) emailed as follows:

If to the Cohen Parties, to:

c/o David A. Schrader, Esq.
Paykin Krieg & Adams LLP
10 Grand Central
155 East 44th Street, 6th Fl
New York, New York 10017
dschrader@pka-law.com

and to
Gregory Cohen
18 Hearthstone Terr.
Livingston, N.J. 07039
gcohen@gcpboxing.com

If to the Honig Parties, to:

215 S.E. Spanish Trail
Boca Raton, Florida 33432
brhonig@aol.com

Any party may, at any time and from time to time, designate a substitute address or addresses for itself by delivering a Notice to the other parties in the manner set forth in this Section. All such Notices, requests, consents and other communications shall be deemed to have been

delivered (i) in the case of personal delivery or delivery by email, on the date of such delivery, provided that the sender does not receive any notice that the email was not delivered (ii) in the case of delivery by nationally recognized overnight courier, on the date of such delivery, and (iii) in the case of mailing in the manner set forth in this Section, on the third business day after the posting thereof.

19.  The signature of any of the parties hereto may be evidenced by a facsimile, scanned email or internet transmission copy of this Agreement bearing such signature. This Agreement may be signed in one or more counterparts, each of which so signed shall be deemed to be an original, and such counterparts together shall constitute one and the same instrument. Notwithstanding the date of execution or transmission of any counterpart, each counterpart shall be deemed to have the effective date first written above.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date set forth above.

GRQ CONSULTANTS, INC.

_____
~~Barry Honig, Authorized Member~~
Alan Honig, President

_____
Barry Honig, Individually
Nov 5, 2019

_____
ALAN HONIG, Individually   Nov. 5, 2019

GREG COHEN PROMOTIONS, LLC

By: _____
Gregory D. Cohen, Managing Member

_____
Gregory D. Cohen, individually

9