| | |
|---|---|
| **From:** | Greg Cohen <gcohen@colonialventuresllc.com> |
| **Sent:** | Friday, July 15, 2022 1:13 AM |
| **To:** | brhonig@aol.com |
| **Subject:** | Sirenko-Cully-Docs-Signed |
| **Attachments:** | SIRENKO-EPA-SIGNED.pdf; Co-Promotional Letter Agreement-Cully-SIGNED.pdf; Co-Promotional Contract (Cully)-SIGNED.pdf |

BH- for your records

Thank you!



**Gregory D. Cohen**
Chief Executive Officer

**Colonial Ventures LLC**

GCohen@ColonialVenturesLLC.com
**(973) 699-4714** (C)
**(212) 851-6425** (W)
**(212) 208-4472** (F)

1



To: Bulldog Boxing Promotions, LLC
Date: July 13, 2022

Re:     Gary Cully Promotional Rights Agreement

Gentlemen:

We refer to the Promotional Rights Agreement by and between, on the one hand, Probellum USA Corporation ("Probellum") and Bulldog Boxing Promotions, LLC ("Bulldog") and, on the other hand, Gary Cully Co-Promotional Agreement executed on July 14th, 2022 (the "Promotional Rights Agreement").  Probellum and Bulldog are individually a "Party" and jointly referred to as the "Parties".  All capitalized terms which are not otherwise defined in this letter agreement shall have the meaning as defined in the Promotional Rights Agreement.

1. <u>Promotional Rights Agreement</u>.  In consideration of the various payments and mutual obligations set out in this Agreement, the sufficiency of which is hereby acknowledged, the Parties agree to act as the Fighter's co-promoters, for all of the Fighter's Bouts under the Promotional Rights Agreement on the terms set out herein.  For clarity, the Parties agree that Probellum shall promote the Fighter, alongside Bulldog, for each of the Bouts under this Agreement and shall have control, subject to the terms of this Agreement and mutual agreement with Bulldog, over decisions in relation to the Bouts including, but not limited to, opponents, date and venue, and shall be granted the promotional rights to the Fighter and the Bouts as set out in the Promotional Rights Agreement.  Bulldog hereby consents and agrees that Probellum may enter into Bout agreements, and any other agreements and understandings with Fighter, on terms acceptable to Probellum and Bulldog.

2. <u>Term</u>. This letter agreement shall remain in force and effect for the duration of the Promotional Rights Agreement.

3. <u>Co-Promotion Fees</u>.  The Parties agree that any Costs incurred for each Bout promoted by the Parties under the Promotional Rights Agreement, including in respect of Fighter and his opponents, shall be agreed by the Parties in advance.  All revenues generated from Fighter under the Promotional Rights Agreement shall first be applied to the approved Costs and distributed to the Parties as they have incurred them.  The Parties agree to share all remaining Net Profits on an equal basis.

\*\*\*It is further agreed and understood that the parties are moving forward with a proposed bout between Gary Cully & Keith Hunter and have applied for the bout to be sanctioned as a world title final elimination bout, whereby the winner is declared the mandatory challenger for the WBA Regular Champion (Gervonta Davis).  In the event that Hunter wins the bout the split going forward would be 75/25 (Bulldog 75, Probellum 25. In the event Cully wins the parties will maintain a 50/50 split for the life of the agreement.  Bulldog will supply a Twenty Five Thousand Dollar ($25,000) bonus to Cully after the full execution of this document. \*\*\*





4. <u>Definition of Costs</u>. As used in this letter agreement, the term "Costs" shall mean all of the Parties' agreed and documented out-of-pocket accountable costs and expenses in connection with the staging the Bouts and the ancillary rights thereto, including, without limitation of the foregoing, non-appearance, television breakdown, public liability and other insurance; television production, transmission and distribution costs and expenses and commission payments; purses, payments, and non-recoupable compensation and training expenses of all the fighters in the boxing program; booking fees, travel and lodging costs, all arena and ticketing costs and expenses, set-up and breakdown, box office, security, advertising, publicity, production, promotion, marketing, third party legal and accounting; officials' fees and expenses; boxing commission fees and taxes and local taxes on tickets and television revenues. To the extent that there are revenues that either Party receives in connection with the Bouts that are attributable to an agreement that is not tied to the specific Bout (e.g., a multi-bout sponsorship agreement or broadcast output deal covering more than a single event, etc.), the Parties shall allocate the amount of revenue attributable to the Bout in good faith.

5. <u>Definition of Net Profits</u>. As used in this letter agreement, the term "Net Profits" shall mean all revenues received directly by either Party specifically attributable the Bouts in which Fighter participates, including, all net live gate revenues (after ticket taxes, refunds, discounts, credit card and ticket service bureau fees and charges), or the site fee paid to either Party in lieu of live gate revenues, and net revenues from the exploitation of the television and other ancillary rights and sponsorship and merchandising rights as specifically generated from the event, after deducting all Costs.

6. <u>Co-Promotional Recognition</u>. For all Bouts under the Promotional Rights Agreement, the Parties shall receive co-promotional billing to the extent such billing is in Probellum's control. For any Bouts taking place on Probellum events, Bulldog shall be acknowledged as co-promoters of the Bout substantially as follows, "in association with Bulldog Boxing Promotions, LLC".

7. <u>Governing Law & Venue</u>. This letter agreement shall be governed by and construed in accordance with the laws of the State of Delaware governing agreements made and to be performed wholly within the State of Delaware. The Parties agree that the Federal Arbitration Act governs any and all claims related to this letter agreement, including the enforceability, interpretation, and implementation of the arbitration provisions contained herein and provides the procedures for conducting arbitration to the extent not provided for in this letter agreement. The Parties agree to use JAMS, pursuant to the then-effective JAMS Streamlined Arbitration Rules, to administer the arbitration. Except for actions by Probellum seeking injunctive relief, the Parties hereby (i) expressly consent to the sole and exclusive personal jurisdiction and venue of JAMS in Newark, New Jersey and (ii) agree not to assert (by way of motion, as a defense or otherwise) that such arbitration has been brought in an inconvenient forum or manner. Each party shall bear its own costs, fees and expenses of





arbitration.  As an alternative method of personal service with respect to the commencement of any legal, arbitration or mediation proceedings, each of the parties irrevocably consents to the service of any proceedings brought by a party by the sending or e-mailing of copies in the manner provided for in the notices section of this letter agreement.

8.  Confidentiality.  The parties agree to maintain the material terms of this letter agreement as confidential information and to refrain from publicly announcing or reporting such terms, except pursuant to court order or order by a governmental or administrative body or for financial statement reporting purposes.


Probellum USA Corporation                    Bulldog Boxing Promotions, LLC

By: _____                     By: _____



# EXCLUSIVE PROMOTIONAL RIGHTS AGREEMENT

**THIS PROMOTIONAL AGREEMENT** (the "**Agreement**") is made and entered on July 13th, 2022 by and between Probellum USA Corporation and Bulldog Boxing Promotions LLC (collectively, "**Promoter**") and Gary Cully ("**Fighter**").

**WHEREAS**, Promoter is in the business of, among other things, promoting combative sports events throughout the world and desires to enter into an agreement with Fighter to be his exclusive promoter for his future bouts; and

**WHEREAS**, Fighter is a professional boxer and desires to enter into an agreement with Promoter for it to be his exclusive promoter for his future bouts.

**NOW, THEREFORE**, in consideration of the mutual promises and agreements hereinafter set forth, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**1. PURSES**.

(a) Provided that Fighter has won the first Bout (if applicable) and all succeeding Bouts covered by this Agreement, Fighter's purse for each Bout shall be:

| | |
|---|---|
| Eight Round Bouts | Eight Thousand Dollars ($8,000.00) |
| Ten Round Bouts | Ten Thousand Dollars ($10,000.00) |
| Twelve Round Bouts | Twelve Thousand Dollars ($12,000.00) |
| Co-Feature or Main Event Bouts: | To be Negotiated in Good Faith but no less than above |
| World Title Challenge: | Two Hundred Thousand Dollars ($200,000.00) |
| World Title Defense: | Five Hundred Dollars ($500,000.00) |
| World Championship Unification: | Seven Hundred Thousand Dollars ($700,000.00) |

(b) The World Title Challenge, Defense and Unification amounts relate only to the highest level world championship in a sanctioning organization, not interim or "regular" titles.

(c) Notwithstanding the foregoing, in the event that Fighter does not win the first Bout or any subsequent Bout, then in such case, Fighter's purse shall be negotiated and mutually agreed upon between the parties in good faith based on the then-prevailing market conditions for Fighter's bout.

**2. BOUTS.** Subject to Fighter not being suspended by any commission or sanctioning organization and not having any other impediment or condition preventing him from participating in a Bout hereunder, Promoter agrees to offer to Fighter the right to participate in not less than three (3) bouts per year of the Term.

The Fighter is entitled up to four (4) flights and accommodation for each Bout hereunder as well as four (4) tickets to each Bout hereunder.

Upon Fighter being declared world champion, then, notwithstanding the foregoing, with respect to the year of the term hereof in which Fighter is so designated or any such conditions become applicable and each subsequent contractual year, Promoter shall only be obligated to offer to Fighter the right to participate in two (2) Bouts during each such year. For purposes of this Agreement, and in

satisfaction of Promoter's obligations under this Agreement, Promoter shall be deemed to have complied with its obligations with respect to any Bout if it shall have made a bona fide offer to Fighter to participate in a Bout irrespective of whether such Bout actually takes place. In the event that during the term hereof Fighter is designated by a sanctioning organization to participate in a mandatory or elimination bout, Promoter's obligation to offer Bouts to Fighter shall be suspended during the period commencing on the date of such designation and ending on the completion of the bout.

**3.    PROMOTION**. Fighter hereby grants Promoter the sole, exclusive, and worldwide right to secure and arrange all bouts (including, without limitation, boxing, mixed martial arts, martial arts, kickboxing, wrestling or any other combative sports bouts, contests, competitions or exhibitions, whether as an individual or team participant and whether as a professional or amateur participant) (individually, a "**Bout**" and collectively, the "**Bouts**") requiring Fighter's services and to secure, arrange and promote all such Bouts, all upon and subject to the terms and conditions hereinafter set forth.

(a)    Fighter agrees that his Bouts will be conducted and the officials shall be designated in conformity with the rules and regulations of the applicable athletic or boxing commission and/or any sanctioning organization, and Fighter agrees that he will fully comply with all such applicable rules and regulations.
(b)    Fighter agrees that he shall participate in each of the Bouts to best of Fighter's ability and that he shall diligently prepare for and honestly compete in each of the Bouts. Fighter further agrees that he shall stay in top physical condition and maintain his fighting weight during the term hereof so that Fighter will be ready, willing and able to participate in a Bout offered by Promoter on the scheduled date.
(c)    Fighter agrees that he shall not take or use any drugs or other substances which are prohibited by any law or any athletic or boxing commissions and will otherwise comply with all of the anti-doping rules of such commissions and sanctioning organizations. Except as otherwise provided by the rules and regulations of the applicable athletic or boxing commission with jurisdiction over an applicable Bout, Fighter agrees that Promoter shall have the right to designate the brand and size of the gloves to be used in his Bouts, the ring size of the Bout, the order of ring walks and fighter introductions and any and all other matters pertaining to the presentation and staging of the Bout.
(d)    Fighter further agrees that in the event that Fighter agrees in his Bout Agreement to fight a Bout at a certain weight and Fighter fails to weigh-in for such Bout at or below the applicable weight limit, in addition to Promoter's other rights and remedies, Fighter agrees that he will be solely liable for any and all damages Promoter is required to pay to Fighter's opponent or any other person or entity due to Fighter's failure to make weight.

**4.    TERM**.

(a)    This Agreement shall be for a term of four (4) years, commencing on the date of Fighter's first Bout hereunder (the "Term").

(b)    In the event that Fighter is ranked within the top fifteen of any sanctioning organization (WBC, WBA, IBF, WBO, Ring, or other similarly recognized organization), the Term of this Agreement shall automatically extend for a 12-month period.

(c)    If Promoter offers the Fighter an opportunity to participate in a world championship challenge bout during the Term, the Term of this Agreement shall automatically extend for a 12-month period beyond any other extension.

(d) In the event that Fighter is recognized as a world champion during the Term, the Term of this Agreement shall be automatically extended for a 24-month period in addition to any other extensions set forth herein.

(d)     If at any time during the Term, Fighter is unable or unwilling to compete for a period of time (including without limitation, any periods of time when Fighter is disabled, sick or injured for any reason; incarcerated; suspended or revoked by an Athletic Commission; has Fighter's ability to travel restricted by a governmental agency or is otherwise unable, unwilling or refuses to compete or train for a Bout for any reason whatsoever), for each such period, the Term shall automatically be extended for such period of time in which the Fighter is unable or unwilling to compete.

(d)     If at any time during the term, Fighter decides to retire for boxing or other professional fighting competition or is permanently disabled, then Promoter may, at its election, suspend the Term for the period of such retirement or disability (such suspension not to exceed five (5) years, the "**Maximum Suspension Period**"). At the expiration of the Maximum Suspension Period, if Fighter remains in retirement or such disability continues, this Agreement shall automatically terminate.

**5.     NOTICES**. Any notice required or desired to be given hereunder shall be in writing and sent (i) postage prepaid by certified mail, return receipt requested or (ii) by e-mail, addressed as follows:

(a) To Promoter                                                              (b) To Fighter c/o Advisor

E-MAIL: notices@probellum.com                                  Lee Beard
        Gcohen@colonialventuresllc.com
                                                                             E-MAIL: Lee@lpmg.live

All such notices shall be deemed given when mailed or e-mailed. In the event that Fighter does not fill-in or only partially completes the foregoing notice section applicable to Fighter's contact details, Fighter hereby consents to Promoter completing said section based on its contact information for Fighter in its books and records.

**6.     WORLDWIDE RIGHTS TO BOUTS**. Fighter grants to Promoter the following rights, including, but not limited to, all worldwide rights, title and interest to the Bouts promoted by Promoter hereunder, in perpetuity, including, but not limited to: (a) The right to all site fees, live-gate receipts, sponsorship fees, and motion picture, radio, television (whether live or delayed, interactive, home or theater, pay, pay-per-view, satellite, closed circuit, cable or subscription), telephone, computer, CD-ROM, broadband, digital, and online services, the worldwide web and the "Internet" (as such term is commonly understood currently or in the future) (collectively, the "Internet"), video and audio cassette, virtual advertising, photograph, including raw footage, out takes and negatives, merchandising and program rights now or hereinafter invented in connection with or based upon the Bouts or the activities pertaining to the Bouts, including, but not limited to, training and press conferences for the Bouts (the "Pre-Bout Events"), post-fight press conferences (the "Post-Bout Events) and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices, whatsoever; (b) The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the rights granted hereunder and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the rights granted hereunder, including, without limitation, in connection with the exploitation of Merchandise and Event Merchandise (the rights with respect to Event Merchandise shall be exclusive to Promoter and the rights with respect to Merchandise shall be non-exclusive to Promoter); (c) The right to do all things necessary for the full and complete use, exploitation and exercise of the rights granted Promoter hereunder, including the right to promote, exploit and turn to account all rights granted hereunder and the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to said rights for the proper production and promotion of radio, television and Internet broadcasts of the Bouts, the Pre-Bout Events

and the Post-Bout Events, such as announcers, commercials, artwork and other elements; (d) All right, title and interest in and to any recordings of the television, Internet and radio broadcasts and motion picture films and video and audio cassettes of, or based upon the Bouts, the Pre-Bout Events and the Post-Bout Events, including, but not limited to, magnetic tapes, and the right to secure in its own name or that of its nominee copyright and other protection to the extent available throughout the world; (e) The right to use and exploit in any media, including, without limitation, digital assets, Fighter's identity, the name, likeness and biography of his manager, trainers and other persons associated with him who are connected with the Bouts, for the purpose of advertising, promotion, publicity, merchandising and exploitation of the Bouts, the Pre-Bout Events and Post-Bout Events, and for the creation, development, production, distribution, marketing, sale, and license of dramatic and fictionalized versions of the Bouts, Pre-Bout Events, and Post-Bout Events , including in motion pictures and video content (live action and animated) for any platform or media now known or hereafter devised, all without compensation or payment to any of the aforesaid parties;  (f) The non-exclusive right to use a three minute clip of the recording of any prior bout, press conferences, interviews, training sessions or other footage in which Fighter was a participant to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights for the purposes of publicizing, advertising and promoting the Bouts and for inclusion within Promoter's and its licensees' telecasts of the Bouts which shall be delivered to Promoter upon request therefore; (g) The exclusive right during the Term hereof to use Fighter's Identity (as defined herein), in Promoter's sole discretion, in connection with the creation, development, manufacture, distribution, marketing and sale directly or by third parties of games, toys and dolls, including, without limitation, video and computer games, Internet games, interactive games, and virtual reality and augmented reality, games, video games, or experiences, including the recreation in whole or in part of Fighter's participation in any Bout or the creation of virtual bouts or other content (e.g., immersive training programs), for any platform or media now known or hereafter devised, irrespective of whether such use is in connection with a Bout (and Fighter hereby covenants and agrees, for no additional consideration other than reimbursement for Fighter's reasonable travel and accommodations, to participate in such motion capture or body scanning activities (including by means of wearing sensors, wearable devices or similar technologies) as Promoter may reasonably request from time-to-time during the Term), and the right to exploit the same in any and all media now known or hereafter developed throughout the universe in perpetuity; (h) The exclusive right during the term hereof to directly or through third parties create, use, monetize and otherwise exploit digital assets, including, without limitation, non-fungible tokens (collectively, "NFTs") based upon and/or related to Fighter and/or Fighter's Identity, Bouts, Pre-Bout Events, or Post-Bout Events (i) The right to change, add to, take from, translate, reformat or reprocess any materials derived from the exploitation of the foregoing rights by Promoter and the results and proceeds therefrom (collectively, the "Materials") in any manner Promoter may in its sole discretion determine.  To the fullest extent allowable under any applicable law, Fighter hereby irrevocably waives or assigns to Promoter its so-called "moral rights" or "droit moral".  Fighter expressly acknowledges that many parties will contribute to the Materials and other works that will embody all or part of the Material.  Accordingly, if under any applicable law the above waiver or assignment by Fighter of "moral rights" or "droit moral" is not effective, then Fighter agrees to exercise such rights in a manner which recognizes the contribution of and will not have a material adverse effect upon such other parties or the Materials. (j) To the extent Fighter owns or controls, in whole or in part, the copyrights and other right, title and interest in and to any tattoos etched or otherwise displayed on the body of Fighter (collectively, "Tattoos"), Fighter hereby grants to Promoter the irrevocable, perpetual non-exclusive, transferrable, assignable and sub-licensable right and license throughout the world, to use, publish, reproduce, distribute, display and exhibit such Tattoos in any manner and on or through any media, in connection with Promoter's exercise of any of its other rights hereunder."

   7.   **ROYALTY.** In consideration for the grant of rights by Fighter to Promoter hereunder, Promoter

shall pay to Fighter a royalty ("Merchandise Royalty") in connection with the sale of all Merchandise (as defined herein) bearing Fighter's Identity as follows: (a) The Merchandise Royalty shall be equal to twenty-five percent (25%) of Net Revenue (as hereinafter defined) actually received by Promoter in connection with the commercial exploitation of Merchandise containing only Fighter's Identity in any calendar year during the Term. (b) For any Merchandise that uses both Fighter's Identity and the name and/or likeness of other(s) with respect to whom Promoter has entered into a merchandising or other licensing agreement (*e.g.*, other fighter(s)), the Net Revenue shall be divided by the number of such individuals featured in such Merchandise for purposes of calculating the Merchandise Royalty. (c) No Merchandise Royalties shall be earned or paid with respect to Event Merchandise (as hereinafter defined), or for Merchandise used for promotional, marketing or goodwill purposes. (d) Except as expressly set forth in this paragraph, Fighter shall not be entitled to receive Merchandise Royalties or any other form of compensation with respect to any other goods, services or otherwise in connection with the exploitation of the rights herein granted. (e) All Merchandise Royalty payments due and owing to Fighter hereunder shall be made annually on or before March 1 for the immediately preceding calendar year. Each Merchandise Royalty payment to Fighter shall be accompanied by a statement of the Merchandise Royalties earned by Fighter hereunder during the applicable preceding calendar year. If Fighter does not object to any items set forth in the preceding sentence within three (3) months of Fighter's receipt thereof, then such payment shall be deemed binding and uncontestable. (f) After the expiration or termination of this Agreement (or termination of Sections and rights hereunder), Promoter shall have the non-exclusive worldwide right to Use Fighter's Identity, in its sole discretion, in connection with the creation, development, manufacture, distribution, marketing and sale directly or by third parties of Event Merchandise and Merchandise as follows: (i) For (A) a period of one year following the expiration or termination of this Agreement (or termination of specific Sections and rights hereunder), Promoter may (directly or through third parties) continue to create, develop, manufacture, distribute, market, and sell directly or by third parties <u>new</u> Event Merchandise, and Merchandise (including, for clarity, new and previously unreleased products that were in development prior to the expiration or termination of the Agreement, and any updates, re-releases, refreshes and reproductions of existing Event Merchandise and Merchandise) and (B) with respect to digital or other online versions of Event Merchandise or Merchandise shall continue to have the right to distribute, market and sell, any previously developed, created or released Event Merchandise and Merchandise in perpetuity (the periods described in (A) and (B), collectively, "Post-Term Use Period"). (ii) Upon the expiration of the Post-Term Use Period, Promoter shall have no rights to create, develop or manufacture <u>new</u> Event Merchandise and Merchandise. (g) As used herein, the following terms shall have the following meanings: "Event Merchandise" means any Merchandise derived from, created, used or sold in connection with any Bouts, pre-Bout events or post-Bout events. "Fighter's Identity" means Fighter's name, image, voice, likeness, nicknames, aliases, persona, signature, biographical material, trade dress, movements, gestures, actions, logos, titles, trademarks, service marks, pictures, performances, commentary, digital identifiers (*e.g.*, emoji's, avatars, website domain names, social media handles, etc.), statistics, data (including personal data), and all rights of publicity in and to the foregoing. "General Merchandise" shall include, without limitation, all apparel goods, such as t-shirts, hats, footwear, outerwear, jackets, fight night product kits (*e.g.*, the trunks, gloves, robe, shoes, track suit, jacket, jersey, hooded sweatshirt, walkout pants, regalia or any other part of the costume worn or to be worn by Fighter, and Fighter's personnel and affiliates (e.g., trainers, managers), in connection with any Bout), and training and performance apparel and lifestyle apparel (*e.g.*, fan gear) provided by Promoter's third party licensee), and non-apparel goods, such as banners, buttons, posters, jewelry, photographs, souvenirs, toys, collectibles, casino games, trading cards (electronic or otherwise), auction and memorabilia items (*e.g.*, signed apparel), and merchandising tie-ins, as well as virtual and digital goods (including without limitation, video games and NFTs) and any and all other similar products (including the sleeves, jackets, tags and packaging for such products) hereunder made, licensed or distributed by any method now known or hereafter devised that is

5

approved by Promoter. "Merchandise" means all General Merchandise other than Event Merchandise. "Net Revenue" means the net amount of revenues actually received by Promoter minus any costs, expenses, taxes, credit card fees, shipping and handling charges, placement fees and similar expenses, commissions, discounts given on sales orders and returns actually made or allowed, for Merchandise that Promoter manufactures, markets and sells or licenses to third parties to manufacture, market and sell and for which Promoter actually receives payment from such third party.

**8. FURTHER ASSURANCES**. Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, without limitation, a standard Bout Agreement in such form as may be required by Promoter, the local governmental authority with jurisdiction over the bout and/or the organization(s) sanctioning the bout if applicable. No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

**9. PROMOTIONAL ACTIVITIES**. As set forth in Schedule A, Fighter agrees that without additional consideration or compensation (a) he will cooperate and assist in the advertising, publicity, and promotion of the Bouts, other bouts and events promoted by Promoter and his fighting career, including his appearance at such press conferences, interviews and other promotional activities as Promoter may designate and (b) he will promote Promoter and his bouts on social media in a manner (timing, frequency, content) designated by Promoter.

**10. ASSIGNMENT**. Promoter shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder, including, without limitation, the right to co-promote the Bouts in association with or to deliver the services of fighter to any one or more persons or entities of Promoter's choosing, and by way of merger, sale of all or substantially all of Promoter's assets. The rights and obligations of Fighter arising from this Agreement and any Bout Agreement are personal to Fighter and the benefits and the duties of Fighter hereunder may not be assigned, pledged or transferred for any reason.

**11. EXCLUSIVITY**. In consideration of the obligations of Promoter to secure, arrange for, and promote Bouts requiring Fighter's services, and to pay Fighter's purses, as provided herein, including, without limitation, providing the services of Fighter to another promoter pursuant to a Provision of Services Agreement ("POS"), Fighter agrees that during the term hereof, Fighter shall not participate in any bouts other than Bouts promoted or co-promoted by Promoter or for which Promoter has granted Fighter prior written permission and Fighter shall not render his services as a combative sports participant to any person, firm or entity other than Promoter, except with Promoter's prior written permission. Fighter recognizes and agrees that this restriction is necessary to protect Promoter's legitimate business interests.

**12. TERMINATION BY PROMOTER**.

(a) In the event that Fighter does not win the first Bout or any subsequent Bout, Promoter shall have the right to terminate this Agreement at any time by providing notice to Fighter. (b) Fighter shall conduct himself, and shall cause his manager, trainers, assistants and other persons associated with him who are connected with his Bouts (collectively, the "Fighter Assistants") to conduct themselves, with due regard to Promoter's policies and public morals and conventions, particularly with respect to the countries where Fighter's Bout hereunder have taken place or are scheduled to take place. Fighter shall not, either while rendering his obligations under this Agreement or otherwise during the term of this Agreement, commit or permit any of the Fighter Assistants to commit, an offense involving moral turpitude under international, federal, state or local laws or ordinances. Fighter shall

6

not do or commit or permit the Fighter Assistants to do or commit any act or thing which might tend to bring Fighter, Promoter and/or Promoter's event sponsors, foreign and domestic media distribution networks, sites and venues (individually, an "Event Affiliate") into public disrepute, contempt, scandal or ridicule, or which may embarrass, offend, insult or denigrate individuals or groups, or that may shock, insult or offend the community or Promoter's or an Event Affiliate's workforce or public morals or decency or prejudice Promoter or an Event Affiliate, or which results in or is likely to result in actual or threatened claims against Promoter or an Event Affiliate, or which otherwise might tend to reflect unfavorably upon Promoter or an Event Affiliate, in general.  Notwithstanding anything to the contrary contained in this Agreement, in the event that Promoter determines reasonably and in good faith based on the information in Promoter's possession at the time it renders its decision (including mainstream media reports—even if such information subsequently is determined to be inaccurate) that Fighter has breached this Subparagraph, Promoter may, in addition to all other legal and equitable remedies available to Promoter, immediately terminate this Agreement upon written notice to Fighter given at any time following the date on which the commission of such act, or such conduct, shall have become known to Promoter and upon such termination, neither party shall have any further rights or obligations hereunder.

13. **INDEPENDENT CONTRACTOR**. Nothing herein contained shall be construed to constitute Fighter as an employee of Promoter or Promoter a fiduciary of Fighter.  Fighter and Promoter are independent contractors vis-à-vis each other and this Agreement shall not be construed to be a partnership, joint venture, trust or any other type of similar arrangement.  As an independent contractor, Fighter shall be solely responsible for his own actions and expenses and except as otherwise expressly set forth herein, Fighter shall be solely responsible for the payment of any and all costs and expenses incurred by him in connection with the Bouts, including, without limitation, payment of all fees to his manager, trainers, seconds, assistants, sparring partners, his entourage, maintenance and training expenses, medical bills, medical tests, anti-doping fees, sanctioning fees, costs for championship belts, taxes, fighting licenses, permits and fees, rights clearances, insurance, and travel, food and accommodations in excess of the amounts provided by Promoter pursuant to the Bout Agreement for the Bout.

14. **EQUITABLE RELIEF**. Fighter acknowledges that his services as a professional boxer are special, unique, extraordinary, irreplaceable and of peculiar value, and that in the event of Fighter's breach or threatened breach of this Agreement, Promoter would suffer irreparable damage, which could not be reasonably or adequately compensated by an action at law.  Accordingly, Fighter expressly agrees that in the event of such breach or threatened breach, Promoter shall be entitled, in addition to all other rights and remedies available to it, to obtain equitable relief (without having to secure any bond or other security in connection with Promoter's application for such relief), including, but not limited to, an injunction against such breach in any court of competent jurisdiction, and that Fighter will not assert as a defense in any such action that Promoter has an adequate remedy at law. Notwithstanding anything herein to the contrary, in no event shall Fighter have any right to seek or obtain injunctive or other equitable relief in connection with this Agreement (including, without limitation, the advertising, promotion, marketing, production, distribution, exhibition or other exploitation of any Bout, Merchandise or Event Merchandise), and Fighter agrees that its sole and exclusive remedy arising out of or relating to a breach of this Agreement shall be an action at law for money damages.

15. **ATTIRE/CLEARANCES**.

(a)     Fighter agrees that no advertising or promotional material (including, but not limited to, permanent or temporary tattoos or body art) shall appear on the body of or on any item of clothing worn by Fighter, his trainers, seconds, assistants or other members of his team or entourage during and/or at the Bouts, press conferences, training sessions open to the public or press, or while at the site of the Bouts if the Fighter's endorser is competitive with Promoter, an event sponsor, the venue, a broadcaster or other partner in the event.  Promoter shall have final approval on the Fighter's fit kit, including placement and design of the Fighter's personal endorsements.

(b)     Fighter further agrees that he will obtain prior to each of the Bouts (and does hereby grant, convey and assign to Promoter) on behalf of himself and his manager, trainers, assistants and other persons associated with him who are connected with the Bouts, all without compensation or payment whatsoever by Promoter to any person or entity, any and all required clearances, consents and licenses as are necessary with respect to Promoter's and its licensees' and assignees' worldwide exploitation in perpetuity of the Bouts as permitted in Paragraph VI above, including, without limitation, (i) any music licenses for Fighter's ring walk, (ii) footage licenses for Fighter's prior bouts, training sessions, interviews and other Fighter footage provided to Promoter hereunder by Fighter or third parties on behalf of Fighter, (iii) all consents, permissions and/or approvals for Fighter or his agents to wear, display, mention or exploit during, or in connection with, the Bouts (including, without limitation, during training sessions, press conferences or interviews) any name, logo, copyright, trademark or service mark, common law or other right (including, without limitation, any literary, dramatic, comedic, musical or photoplay right) of any person, firm or corporation, (iv) any performer residuals and consents and/or payments payable to any persons appearing in or rendering services in connection with the Bouts which are engaged by Fighter or his agents, and (v) all copyright clearances and permissions with respect to any of the foregoing.

16. **REPRESENTATIONS, WARRANTIES AND COVENANTS**.

(a)     Fighter represents, warrants and covenants to Promoter that he has the full right, power and authority and is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, agreement or understanding, whether oral or written, which conflicts in any material respect with the provisions hereof or which purports to grant similar or conflicting rights to any person, firm, or entity other than Promoter, or which would or might interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by Promoter of any of the rights granted to Promoter under this Agreement.  Fighter further represents and warrants to Promoter that there are no claims pending or threatened or any litigations affecting Fighter which would or might interfere with the full and complete exercise or enjoyment by Promoter of any rights granted hereunder.  Fighter further represents and warrants that its grant of rights pursuant to paragraph VI above, Fighter's contribution to the Materials, and Promoter's exercise and enjoyment of such rights, will not violate any law or infringe any rights of any third party, including, but not limited to, copyright, trademark, unfair competition, contract, defamation, privacy, publicity or moral rights.

(b)     Fighter further acknowledges that Promoter is entering into this Agreement in reliance upon the warranties, representations and covenants herein, and Fighter assumes liability for, and shall indemnify, defend, protect, save and hold harmless Promoter, its affiliated companies, divisions, subsidiaries, distributors, assigns, licensees and the respective shareholders, directors, officers, partners, employees, agents and attorneys of the foregoing (the "Promoter Indemnified Parties") from and against any and all claims, actions, suits, costs, liabilities, judgments, obligations, losses, penalties, expenses or damages (including, without limitation, reasonable legal fees and expenses) of whatsoever

kind and nature imposed on, incurred by or asserted against any of the Promoter Indemnified Parties arising out of any breach or alleged breach by Fighter of any representation, warranty or covenant made, or obligation assumed, by Fighter pursuant to this Agreement.

(c) Fighter understands and agrees that by training for and participating in combative sports, Fighter is engaging in an abnormally dangerous activity and that Fighter's participation in this activity subjects Fighter to a risk of severe injury or death and that the effects of such participation may include severe medical problems which develop many months or years later. Fighter, with full knowledge of this risk, nonetheless agrees to enter into this Agreement and to participate in the Bouts and hereby, on behalf of himself and as applicable, his spouse, heirs, executors, administrators, successors and assigns, waive, release and forever discharge any and all claims that Fighter and/or his spouse, heirs, executors, administrators, successors and assigns may have against any of the Promoter Indemnified Parties arising from or related to any injury or death Fighter may suffer as a result of his training for or participation in combative sports.

17. **OTHER ACTIVITIES OF PROMOTER**. Nothing herein shall prevent Promoter from engaging in promotion activities for any other professional boxer, including others in the same weight class as Fighter, or any other activities. Fighter further agrees that this Agreement shall be valid and binding on Fighter irrespective of the status of Promoter's promoter or other licenses in any particular jurisdiction and covenants not to assert any claim that this Agreement is void or unenforceable as a result of Promoter not being licensed as a promoter or not having any other business license in any particular jurisdiction.

18. **FORUM SELECTION/GOVERNING LAW**.

(a) Agreement shall be governed by and construed in accordance with the laws of the State of Delaware governing agreements made and to be performed wholly within the State of Delaware. The Parties agree that the Federal Arbitration Act governs any and all claims related to this Agreement, including the enforceability, interpretation, and implementation of the arbitration provisions contained herein and provides the procedures for conducting arbitration to the extent not provided for in this Agreement. The Parties agree to use JAMS, pursuant to the then-effective JAMS Streamlined Arbitration Rules, to administer the arbitration. Except for actions by Promoter seeking injunctive relief, the Parties hereby (i) expressly consent to the sole and exclusive personal jurisdiction and venue of JAMS in Los Angeles, California and (ii) agree not to assert (by way of motion, as a defense or otherwise) that such arbitration has been brought in an inconvenient forum or manner. Each party shall bear its own costs, fees and expenses of arbitration. As an alternative method of personal service with respect to the commencement of any legal, arbitration or mediation proceedings, each of the parties irrevocably consents to the service of any proceedings brought by a party by the sending or e-mailing of copies in the manner provided for in the notices section of this Agreement.

19. **PURSE BIDS**. The parties recognize that, during the term of this Agreement, Fighter may be eligible to participate in a bout (a "Purse Bid Bout") that will be the subject of a purse bid or purse offer conducted by a sanctioning organization and acknowledge that such bouts are generally reserved for championship or elimination bouts. Fighter acknowledges that Promoter's promotional efforts on Fighter's behalf are a significant contributing factor in Fighter becoming eligible to participate in such a Purse Bid Bout. In the event that Fighter is designated as a participant in a Purse Bid Bout and Promoter does not win the rights to promote such Purse Bid Bout, then, in consideration of Promoter's overall promotional obligations hereunder and with the understanding that Promoter will lose the opportunity to profit from said bout notwithstanding those efforts, Fighter shall pay to Promoter a fee in recognition of Promoter's overall promotional services and the benefits realized by Fighter thereby

9

and in exchange for a release of Promoter's exclusive rights hereunder. The fee to be paid by Fighter to Promoter in such case shall bear a relationship to the benefits realized by Fighter and shall, accordingly, be an amount equal to Thirty Percent (30%) of any amount paid to Fighter in respect of such Purse Bid Bout, unless otherwise agreed upon by the parties herein. The parties further understand and agree that (i) Promoter shall have no obligation to make any bid with respect to any Purse Bid Bout, (ii) in the event that Promoter makes a bid, the amount of such bid shall be in Promoter's sole and exclusive discretion and shall not in any way be tied to Promoter's minimum purse obligations under this Agreement, (iii) Promoter shall have no obligation to make a bid that would, if the bid were the winning bid, result in Fighter receiving any specified amount in respect of such Purse Bid Bout (including any minimum purse otherwise provided for by this Agreement), (iv) in the event Promoter wins the rights to promote the Purse Bid Bout, Fighter's purse for the Purse Bid Bout shall be in accordance with the rules and regulations (or applicable ruling or order) of the applicable sanctioning organization conducting the purse bid or purse offer (but in no event less than a minimum purse set forth herein unless otherwise agreed by the parties), and (v) such Purse Bid Bout shall, whether or not Promoter promotes such Purse Bid Bout, be deemed to constitute a Bout hereunder for purposes of calculating the number of Bouts Promoter is required to offer Fighter during each year of the Term hereof pursuant to the first sentence of Paragraph II above.

**20. NOTICE OF BREACH AND OPPORTUNITY TO CURE/WAIVER.** In the event that Fighter claims that Promoter has breached any provision of this Agreement, Fighter shall give Promoter written notice detailing such claimed breach within 30 days of the date that such cause of action accrued (the "30 Day Period"). Promoter shall notify Fighter within 30 days of Promoter's receipt of notice by Fighter whether Promoter intends to cure any such alleged breach. In the event that Promoter so notifies Fighter that Promoter intends to cure said alleged breach, Fighter shall be precluded from commencing any action against Promoter based upon such breach provided Promoter cures such breach within six months from Promoter's receipt of notice by Fighter. Fighter consents in advance to the dismissal of any action commenced prior to the expiration of such six month period. In the event that Fighter fails for any reason whatsoever to provide notice to Promoter of such claimed breach within the 30 Day Period, Fighter shall be deemed to have waived and released and hereby does waive and release Promoter from any and all liability with respect to such claimed breach.

**21. FIGHTER REMEDIES.** Notwithstanding anything in this Agreement or otherwise to the contrary: (i) Promoter shall not be liable to Fighter or to any third party for any lost profits, any loss of business, or any indirect, consequential, incidental or special losses or damages, including without limitation, punitive damages, of any kind or nature whatsoever, howsoever caused; and (ii) subject to Promoter's right to cure any alleged breach of this Agreement, the sole and exclusive remedy of Fighter for any claim, loss or damages in any way related to, or arising out of, this Agreement, shall be limited to Fighter's actual, direct damages (which are not excluded under clause (i) of this sentence. Fighter hereby waives the right to assert and agrees that he will not assert that the provisions of this Paragraph are unenforceable. Nothing in this Paragraph shall be construed as a limitation on Fighter's right to terminate this Agreement in the event of a material breach of this Agreement by Promoter or on Promoter's rights and remedies in the event of a breach of this Agreement by Fighter, including, without limitation, Promoter's right to seek equitable relief. Additionally, Fighter hereby agrees that in the event (a) there is any default or alleged default by Promoter or any of its affiliates under this Agreement or (b) Fighter has, or may have, any claim arising from or relating to the terms of this Agreement, Fighter shall not commence any lawsuit or otherwise seek to impose any liability whatsoever against Promoter's owners or any of their affiliated companies (the "Affiliated Companies"). Fighter hereby further agrees that (a) Promoter's owners and the Affiliated Companies shall not have any liability whatsoever with respect to this Agreement or any matters relating to or arising from this Agreement, (b) Fighter shall not assert or permit any party claiming through it to assert a claim or impose any

10

liability against Promoter's owner or the Affiliated Companies as to any matter or thing arising out of, or relating to, this Agreement or any alleged breach or default of this Agreement by Promoter and (c) Promoter's owners and the Affiliated Companies are not a party to this Agreement nor liable for any alleged breach or default of this Agreement by Promoter.

**22.    RIGHT OF FIRST NEGOTIATION/LAST REFUSAL.**

(a)    Upon the expiration of the term of this Agreement or in the event that Promoter exercises its right to terminate this Agreement as provided herein, Fighter grants to Promoter, an optional right of exclusive "first negotiation" (as set forth herein). Promoter shall be deemed to have exercised, and hereby elects to exercise its right of first negotiation, unless Promoter notifies Fighter of its election to waive such right upon the expiration of the term hereof or Promoter's termination of this Agreement. For purposes of this Agreement, Promoter's right of first negotiation shall mean that for thirty (30) days after the date of expiration of the term of this Agreement or upon Promoter's termination hereof (the "Exclusive Negotiation Period"), Fighter shall negotiate exclusively and in good faith with Promoter with respect to Fighter's promotional rights and entering into a new exclusive promotional agreement with Promoter.

(b)    In the event no agreement between Promoter and Fighter is reached with respect to a new exclusive promotional agreement by the end of the Exclusive Negotiation Period, Fighter may negotiate with any third party with respect to Fighter's promotional rights; provided, however, that during the period (the "Last Refusal Period") commencing on the expiration of the Exclusive Negotiation Period and ending one year thereafter, Fighter may not enter into any agreement with a third party or parties with respect to Fighter's promotional rights, including, without limitation, promotional agreements, bout agreements or option agreements, without first making to Promoter a written offer (containing full details in regard thereto as well as a copy of the actual offer received by Fighter from such third party), which offer shall be irrevocable for at least ten (10) business days after Promoter's receipt thereof, to enter into an agreement with Promoter therefor on the same Financial Terms (as defined below) offered by or to Fighter to or by said third party or parties. If Promoter rejects, or fails to accept, such offer within such 10 business day period, then and only then, shall Fighter be free to enter into such agreement with such third party or parties. If Fighter does not enter into such agreement with said third party or parties within 5 days of the expiration of such 10 business day period, the terms of this Paragraph shall apply to any outstanding, renewed or subsequent offer received or made by Fighter with respect to Fighter's promotional rights. Promoter's failure to accept any such offer from Fighter shall not constitute a waiver of Promoter's rights of last refusal with respect to any outstanding, renewed or subsequent offers. The parties understand and agree that the term "Financial Terms" only requires Promoter to match the economic terms being offered by or to Fighter to or by said third party or parties for Fighter's purses for his bouts and does not require Promoter to match any non-economic terms, including, without limitation, title opportunities, fighting on particular dates, fighting more than two times per year, fighting particular opponents, fighting on particular networks, or at particular venues.

**23.    SEVERABILITY.**    Nothing contained in this Agreement shall require or be construed as to require the commission of any act contrary to any law, rule or regulation of any governmental authority or to impose any restrictions contrary to public policy, and if there shall exist any conflict between any provision of this Agreement and any such law, rule, regulation or public policy, the latter shall prevail and the pertinent provision or provisions of this Agreement shall be curtailed, limited or eliminated to the extent necessary to remove such conflict, and this Agreement shall continue in full force and effect.

24. **WAIVER**. No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. Except as otherwise expressly provided herein, all waivers must be in writing and be signed by the party against whom the waiver is sought to be enforced. The payment of any monies by any party shall not be deemed a waiver. This Agreement and the rights and obligations of the parties hereunder shall inure to the benefit of and be binding upon the permitted assigns, successors and affiliated entities of the parties hereto.

25. **CONFIDENTIALITY**. Fighter shall not disclose to any third party (other than his employees and agents (including consultants), in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event(s) Fighter shall so notify Promoter as promptly as practicable (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of normal reporting or review procedure to his banks, auditors and attorneys and similar professionals, provided that such banks, auditors and attorneys and similar professionals agree to be bound by the provisions of this Paragraph, and (iii) in order to enforce his rights pursuant to this Agreement. Promoter shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement. Promoter shall have the sole right to file this Agreement with any applicable athletic or boxing commissions and sanctioning organizations.

26. **BENEFIT**. The provisions of this Agreement are for the exclusive benefit of Promoter and Fighter and their permitted successors and assigns, and no third party, including, without limitation, Fighter's manager, trainers, seconds, assistants or other members of his team or entourage, agent, attorney or other representative, shall be a beneficiary of, or have any rights by virtue of, this Agreement (whether or not such third party is referred to herein). The parties understand and agree that all of Promoter's and Fighter's rights and obligations hereunder shall continue unabated throughout the term of this Agreement in all events (whether or not Manager continues to remain Fighter's manager during the term).

27. **FORCE MAJURE**. Promoter shall not be deemed in default of this Agreement to the extent that performance of its obligations are delayed or prevented by reason of any act of God, fire, natural disaster, war, riots, civil unrest, strike or labor difficulties, terrorism, power failure, other calamity or acts constituting force majeure, or any governmental or Athletic Commission enactment, determination or action, regulation or order. If there is an occurrence of a force majeure event or other bona fide action, Promoter may elect to suspend this Agreement for a period equal to the duration of the occurrence, and no compensation shall be paid or become due to Fighter during such suspension period.

28. **ENTIRE AGREEMENT**. This Agreement sets forth and integrates the entire understanding between Fighter and Promoter, and supersedes any and all prior or contemporaneous discussions, e-mails, written or oral agreements or representations between the parties or fighter's management and counsel with respect to the subject matter hereof. Fighter acknowledges and agrees that neither he nor any or his management or counsel are relying on any written or oral representations, statements, discussions, conversations or documents, not included in this Agreement. Further, except as expressly provided herein, this Agreement may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto.

29. **COUNTERPARTS**. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. An electronic signature and copies, PDFs and photographs of an original signature shall be deemed to be and as effective as an original signature. Any signature page of this Agreement may be detached from

any counterpart without impairing the legal effect of any signatures thereon and may be attached to another counterpart, identical in form thereto, but having attached to it one or more additional signature pages.

**30. FIGHTER'S RIGHT TO INDEPENDENT LEGAL COUNSEL. PROMOTER HEREBY RECOMMENDS THAT FIGHTER SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL OF FIGHTER'S CHOOSING REGARDING THE NEGOTIATION AND EXECUTION OF THE TERMS AND CONDITIONS OF THIS AGREEMENT. IN THE EVENT THAT FIGHTER ELECTS NOT TO SEEK SUCH LEGAL COUNSEL, FIGHTER HEREBY AGREES THAT HE WILL NOT ASSERT ANY CLAIM THAT PROMOTER PREVENTED HIM FROM SEEKING LEGAL COUNSEL AND HEREBY RELEASES AND FOREVER DISCHARGES PROMOTER FROM ANY AND ALL CLAIMS RELATING TO FIGHTER'S FAILURE TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THE NEGOTIATION AND EXECUTION OF THIS AGREEMENT.**

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

Probellum USA Corporation

By: _____

Fighter

By: _____
Gary Cully

Bulldog Boxing Promotions LLC

By: _____
Authorized Representative

_____
Advisor

13

**Schedule A**

Without limitation to the foregoing, the Fighter shall:

A. Access:

   i. Fighter to allow host broadcaster access to training facilities for multimedia content creation including filming, interviews, photo shoots and other;
   ii. Fighter to be available to feature or star in other non-live produced content including long-form original content. For clarity, this may include content production outside of the promotional window for the Fighter upon reasonable request and subject to the Fighters reasonable approval;
   iii. Fighter to allow access for interviews live in person and/or live on Zoom (or equivalent) during fight week and event promotion;
   iv. Fighters to allow access to locker room for interviews on fight night;
   v. Fighter to provide all necessary access for other marketing/promotional initiatives in the build-up to any/all fights e.g., filming with other athletes, meet and great with competition winners, access for partners, attending other events

B. Social:

   i. Fighter to post 4 social posts, at minimum, in the build-up to an event in which they are fighting, including at least 1 on the day of the Event (on every live social channel).
   ii. Fighter to provide self-shot footage when reasonably requested.
   iii. Fighter to Live stream to social feeds e.g., IG Live, Countdown Show to promote Events/Other, to be mutually agreed.
   iv. Fighter to interact – share, like, comment – with event related and promoter related social posts from time to time
   v. Fighter to post to social in support of promotional / sponsor campaigns related to the event
   vi. Fighter to identify himself in all of his social media profiles as being promoted by Promoter and tagging Promoter's social media handles